**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **EDWARD P. SURMA,** | ) | **CASE NO.  1:09CV01513** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | |
| | ) | **ORDER REJECTING IN PART** |
| **COMMISSIONER OF SOCIAL** | ) | **REPORT AND RECOMMENDATION** |
| **SECURITY** | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter comes before the Court upon Plaintiff's Objection to the Report and Recommended Decision of the Magistrate Judge, recommending that the final decision of the Defendant be affirmed.  For the following reasons the Court adopts in part and rejects in part the Magistrate Judge's Report and Recommendation and remands this case to the Commissioner for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND

The procedural history and facts presented by the Magistrate Judge's Report and Recommendation (Doc. No. 21 at 1-12) have not been objected to and will be used in part to

1

establish the facts and circumstances pertaining to this case.

On February 10, 2006, Plaintiff, Edward P. Surma ("Surma"), filed an application for a period of Disability Insurance Benefits ("DIB") under Title II of the Social Securities Act, 42 U.S.C. §§ 416(i), and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 423, 1381(a), alleging disability beginning December 12, 2004. *Id.* at 1.  The Administrative Law Judge ("ALJ") held a hearing on October 24, 2008, after which, on December 30, 2008, the ALJ issued his decision determining that Surma was not disabled. *Id.* at 2.

Surma was 41 years of age at the time of his hearing and had not worked since December 31, 2004.  He first visited Leonor M. Osorio, O.D., on January 9, 2005, who diagnosed him as suffering from hypertension and high cholesterol. *Id.* at 3.  The office notes of this visit indicate Surma had a 7-year old daughter and described him as a recovering alcoholic with a history of migraines with photophobia and phonophobia, as well as an occasional marijuana and tobacco use. *Id.*

On April 13, 2005, Surma suffered a drug overdose of which opiates, PCP, Flexeril, and alcohol were detected after tests. *Id.*  Surma's psychiatric assessment stated he had been out of work for four years, drank a lot of coffee, and had been diagnosed as suffering from an adjustment disorder with depressed mood. *Id.*  Surma attended a follow up with Dr. Osorio on April 25, 2005, where he complained of depression and was prescribed Lexapro at 10 mg., a dose that continued to increase as Surma's depression persisted. *Id.* at 4.

Surma began treatment at Bridgeway Inc. in June 2005, which included counseling by Julie Mark, a licensed social worker, and periodic visits with  Dr. J. Shanker. *Id.*  Dr. Shanker

2

diagnosed Surma as suffering from bipolar disorder, panic disorder, polysubstance abuse, hypertension, high cholesterol, and personal issues with his girlfriend and family (daughter who lived with Surma and his girlfriend, and son who lived with his mother).  *Id*. at 4-5.  Surma reported little depression from 2005 through 2006, with some anxiety issues, noting that the antidepressants he was using were helping a great deal.  *Id.*

On June 22, 2006, Todd Finnerty, a state agency psychologist, completed a Psychiatric Review Technique (PST) with Surma.  *Id.* at 5.  Dr. Finnerty diagnosed Surma with bipolar disorder, recurrent severe panic attacks (weekly), gender identity disorder, and substance addiction disorder.  *Id.*  Dr. Finnerty opined that Surma had moderate difficulties in maintaining social functioning and mild difficulties in maintaining concentration, persistence, and pace.  *Id.* Dr. Finnerty also indicated that Surma was moderately limited in his ability to complete a normal workday and workweek without psychological interruptions and to perform at a consistent pace without an unreasonable number and length of rest periods.  *Id.* at 5-6.  Finally, Dr. Finnerty concluded that while Surma was not significantly limited in his ability to respond to changes in the work setting, he was moderately limited in maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness.  *Id.* at 6.

Surma started visiting Heather Ways, M.D., as his general practitioner in August 2006. *Id*.  Dr. Ways treated Surma for various ailments over the next year and a half, and in October 22, 2008, completed an assessment of him entitled "Bipolar Disorder and Related Conditions." *Id*. at 7.  She stated that due to Surma's many symptoms, he would have marked difficulty in maintaining social function as well as maintaining concentration, persistence, or pace.  *Id*. Additionally, the assessment indicated that Surma was moderately impaired in his ability to

understand and remember both simple and detailed instructions, as well as maintaining appropriate behavior and adhering to basic standards of cleanliness and neatness, among other things.  *Id*. at 7-8.  She concluded that Surma was extremely impaired in his ability to maintain attention, to complete a normal workday without interruptions, to perform at a consistent pace, to adapt to a changing work setting, and to travel to unfamiliar places or use public transportation.  *Id*. at 8.

Surma visited Dr. Marlena Roman on November 27, 2007.  *Id*.  Dr. Roman described him as unkempt, polite but timid, as well as having grossly intact cognition, fair to limited insight, fair judgment, fairly good control of psychosis, no depression, good control over panic, and no present medication side effects.  *Id*.  In this visit, Surma reported that he felt, "pretty good."  *Id*.

At the hearing on October 24, 2008, Surma described his daily activities as getting his daughter ready for school, watching television and reading, sometimes going to the store, occasionally visiting the park with his daughter, and attending doctor's appointments about once a month.  *Id*. at 9.  Surma alleged that he suffered severe depressive episodes, had trouble with simple tasks and staying focused, and that he did not get along with people, including coworkers.  *Id*.  Surma also testified that he was able to talk to his daughter's teachers, cashiers, and interact with his girlfriend without problems.  *Id*. at 9-10.

The ALJ's hypothetical question to the Vocational Expert ("VE") stated: "assume an individual of Surma's age, education, and work background with full range of exertional work except that the person was limited to understanding, remembering, and carrying out only simple instructions; was limited to only occasional interaction with coworkers and supervisors and no interaction with the general public."  *Id*. at 10.  The VE indicated that there were unskilled

4

occupations available to Surma in the national economy, including automobile detailer, cleaner, and laundry worker.  *Id*.

After the ALJ issued his decision that Surma was not disabled, Surma requested that the matter be reviewed by the Appeals Council.  When the Appeals Council declined further review on May 13, 2009, the ALJ's decision became the final decision of the Commissioner.  Surma filed a petition for judicial review in district court pursuant to 42 U.S.C. § 405(g).  The case was assigned to a Magistrate Judge, who on April 23, 2010, filed her Report and Recommendation. The Magistrate Judge recommended that the decision of the Commissioner be affirmed.  (Doc. No. 21 at 23.)

## II. STANDARD OF REVIEW

### A.  Civil Rule 72(b) Standard

Pursuant to Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1)(C), the District Court shall review *de novo* any specific objection to a finding in the Magistrate Judge's Report and Recommendation.  The District Court need only review the specific objections and the correlative factual or legal conclusions of the Magistrate Judge.  *Thomas v. Arn*, 474 U.S. 140, 150 (1985).  Local Rule 72.3(b) adds that the District Judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge."

### B.  The Standard in Regards to the Findings of the ALJ

A court's review of the ALJ's findings are limited to determining if the ALJ's findings of fact were supported by substantial evidence in the record and whether the correct legal standards were applied.  *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (Commissioner's conclusions are to be

affirmed if an issue does not exist with substantial evidence or the legal standard).  Substantial

evidence is that which a "reasonable mind might accept as adequate to support a conclusion."

*Kyle v. Comm'r of Soc. Sec.*, — F.3d —, No. 09-3628, 2010 WL 2583375 at *6 (6th Cir. June

28, 2010) (citing *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009)); *See also*

*McGlothin v. Comm'r of Soc. Sec.*, 299 Fed.Appx. 516, 522 (6th Cir. 2008) (noting that

substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").

Additionally, the findings of the ALJ are not subject to reversal if substantial evidence exists in

the record to support an opposite conclusion, so long as substantial evidence also supports the

ALJ's conclusion.  *Kyle*, — F.3d —, 2010 WL 2583375 at *6 (citing *Lindsley*, 560 F.3d at 604-

04).

### III. PLAINTIFF'S OBJECTIONS

Plaintiff raises two objections to the Report and Recommended Decision of the

Magistrate Judge.  Each are reviewed *de novo* pursuant to Fed. R. Civ. P. 72(b).

### A.  The Magistrate Judge's Finding that Substantial Evidence Supported the ALJ's Residual Functional Capacity Finding

Plaintiff's first Objection to the Magistrate Judge's Report and Recommendation is that

the Magistrate Judge erred by recommending that the ALJ's mental Residual Functional

Capacity ("RFC") finding was supported by substantial evidence.  (Doc. No. 23 at 2.)  For

reasons *infra*, this Court finds that the ALJ's RFC finding accurately represented Surma's

abilities and was supported by substantial evidence.

The substantial evidence standard presupposes that there is a "zone of choice" with

which the Secretary (Commissioner in this case) is free to make findings without interference

6

from reviewing courts.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 282 (6th Cir. 2009).  The

ALJ's presence at the hearing uniquely allows him to resolve conflicts in the evidence and to

weigh the credibility of testimony.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  This

Court will give deference to the ALJ's finding unless it applied the wrong standard of law or was

not supported by substantial evidence.

The RFC is the most an individual can do despite his limitations.  20 C.F.R. §

416.945(a)(1).  Thus, the RFC exists to describe a person's abilities, not their maladies.  *See*

*Howard v. Comm'r Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).  Surma argues that Dr.

Finnerty's findings that Surma had moderate limitations in his ability to perform at a consistent

pace without an unreasonable number of rests due to psychological symptoms and his inability to

maintain a standard of cleanliness were not reflected in the ALJ's RFC.  The ALJ's RFC states

"the claimant is able to perform a full range of exertional work but is limited to understanding,

remembering, and carrying out simple instructions; with occasional interaction with

coworkers/supervisors; and no interaction or dealing with the general public."  (Doc. No. 21 at

12.)

Plaintiff cites *Harris v. Comm'r Soc. Sec.*, where it was held that a plaintiff's RFC was

incomplete because it precluded "work that imposes a closely regimented pace of production"

but made no mention of plaintiff's limitation to simple and repetitive tasks.  No. 3:08CV2219,

2010 WL 703070 at 4 (Feb. 23, 2010, N.D. Ohio).  *Harris* can be distinguished from this case

because in *Harris*, the plaintiff's abilities were not accurately described as required in the RFC.

*Id*.  The ALJ in *Harris* mentioned plaintiff's malady, but failed to address the consistent

conclusion that plaintiff was able to only perform simple tasks, thus not fulfilling the purpose of

the RFC in addressing what a claimant is able to do despite his limitations.  *Id*. at 3.

In this case, the ALJ weighed all evidence before constructing a RFC that accurately represented Surma's abilities.  Additionally, Dr. Finnerty's opinion, while stating Surma was moderately limited in his ability to perform at a consistent pace without psychological interruption, also stated that Surma was not significantly limited in his ability to respond to changes in the work setting.  (Doc. No. 21 at 5-6.)  The Magistrate Judge correctly noted that the ALJ's decision to give greater weight to the opinions of the state agency physicians, rather than Dr. Ways, was supported by substantial evidence.  *Id*. at 15.  Also, the ALJ factored in the observations regarding Surma's successful interactions with his daughter's teachers, cashiers, fast food clerks, as well as his various hobbies.  *Id*.  Lastly, Plaintiff does not object to the conclusion that the ALJ considered the entirety of the record when formulating Surma's RFC.  *Id*. at 20-22.  For these reasons, the Magistrate Judge's finding that the ALJ's mental RFC was supported by substantial evidence is adopted.

### B. The Magistrate Judge's Finding that the VE's Opinion was Substantial Evidence

Plaintiff's second Objection to the Magistrate Judge's Report and Recommendation is that the Magistrate Judge found the hypothetical question posed to the VE to be adequate to establish that other employment existed for Surma despite his limitations.  (Doc. No. 23 at 4.)  In the fifth step utilized to determine if a Social Security claimant is disabled, the ALJ considers the RFC, age, education, and past work experience to see if the claimant can make an adjustment to other work.  20 C.F.R. § 404.1520(a)(4).  The Commissioner has the burden of proof at this fifth stage to prove there is work available in the economy for the claimant.  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).  The Commissioner may rely on the testimony of a VE

8

in response to a hypothetical question to establish whether a substantial amount of jobs exist in the economy that the claimant can fulfill.  *Varley v. Sec'y of Health & Human Serv.*, 820 F.2d 777, 779 (6th Cir. 1987).  In order for a VE's testimony in response to a hypothetical question to be substantial evidence in support of an ALJ's opinion denying benefits, the question must accurately encompass a claimant's mental limitations.  *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (holding that enumerated medical ailments are unnecessary in a hypothetical posed to a VE).  The only limitations that need to be included however, are the ones that the ALJ finds "credible."  *See Infantado v. Astrue*, 263 Fed.Appx. 469, 477 (6th Cir. 2008) (citing *Casey v. Sec'y of Health and Human Serv.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

Unlike the ALJ's RFC, the hypothetical question given to the VE was inadequate and did not accurately convey the information needed for the VE's testimony to be substantial evidence.  The hypothetical question stated: "assume an individual of Surma's age, education, and work background with a full range of exertional work except that the person was limited to understanding, remembering, and carrying out only simple instructions; was limited to only occasional interaction with co-workers and supervisors and no interaction with the general public."  (Doc. No. 21 at 10.)  When asked if there were unskilled occupations available for such a person, the VE said there were.  *Id*.  The record demonstrates that the ALJ gave controlling weight to Dr. Finnerty's assessments, which indicated that Surma had "mild difficulties in maintaining concentration, persistence, and pace," and was "moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."  (Doc. No. 21 at 5-6.)  Additionally, the ALJ independently concluded that Surma had

"no more than 'moderate' limitations in the areas of activities of daily living, social functioning, as well as concentration, persistence, and pace." (Tr. 16).  These limitations as to Surma's concentration and pacing should have been included in the hypothetical posed to the VE to encompass his vocational limitations.  *See Webb*, 368 F.3d at 633.

Surma cites *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010) to support his argument that the pace and concentration limitations addressed by Dr. Finnerty and the ALJ should have been mentioned in a hypothetical question to a VE.  (Doc. No. 23 at 5.)  In *Ealy*, the 6th Circuit held that a hypothetical question posed to a VE that omitted the speed and pace-based restrictions considered by a physician and ALJ did not accurately represent the claimant's limitations.  594 F.3d at 516-17 (citing *Edwards v. Barnhart*, 383 F.Supp.2d 920, 930-31 (E.D. Mich. 2005) (a hypothetical limiting claimant to "jobs entailing no more than simple, routine, unskilled work" was not adequate to convey moderate limitation in ability to concentrate, persist, and keep pace) ("Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job.")).  Here there are several portions of the record, including the opinion of Dr. Finnerty (Doc. No. 21 at 5) and the independent finding of the ALJ (Doc. No. 18 at 16) that indicate Surma had mild to moderate limitations as to production, persistence, pace, and moderate limitations in his ability to complete a normal work week without unreasonable psychological interruption.  The hypothetical question given to the VE does not mention any pace-related limitations, and thus does not accurately represent Surma's mental limitations in order to be considered substantial evidence.

The Magistrate Judge argues that these limitations were part of the ALJ's analysis of the severity of Surma's medical impairments, not an assessment of Surma's RFC.  (Doc. No. 21 at

10

22.)  Taken liberally, this Court aligns that argument with that of the Commissioner addressing the comparative weight of sections of the Mental Residual Functional Capacity Assessment Form (SSA-4734-F4-SUP).  (Doc. No. 24 at 3.)  These arguments fail to address the substantial evidence in the record that points towards Surma's moderate limitation to pace-related functioning in the workplace, and how these factors were not considered in the hypothetical question.

Additionally, the Commissioner argues in his Response to Plaintiff's Objections that Dr. Finnerty's findings in regards to Surma's pace limitations "did not indicate any need for greater limitations in the ALJ's residual functional capacity finding."  (Doc. No. 24 at 3.)  This is indeed true, yet the issue is not the ALJ's RFC finding, but the accuracy of the hypothetical question given to the VE.  The Magistrate Judge concludes in the Report and Recommendation, without objection, that the ALJ properly weighed and balanced the testimony of Dr. Ways and Dr. Finnerty in coming to an independent decision that Surma had moderate limitations with maintaining concentration, persistence, and pace.  (Doc. No. 21 at 16.)  There were no inconsistencies or contradictions in the record that would normally justify omitting a limitation from the hypothetical question posed to the VE.  *See Foster v. Halter*, 279 F.3d 348, 356 (6th Cir. 2001) (contradictions and inconsistencies in the medical testimony of multiple doctors supported the exclusion of mental limitations from the hypothetical question).  In this case, the ALJ came to an independent conclusion, based on the entirety of the evidence, that included pace, persistence, and concentration limitations, and yet failed to include these mental limitations in the hypothetical question to the VE.  (Doc. No. 21 at 16.)

Additionally, the ALJ did not carefully reason why limiting Surma to simple, repetitive

11

tasks addresses the moderate limitations in pace, persistence and concentration he established when weighing Dr. Ways and Dr. Finnerty's opinions.  Dr. Finnerty does not offer an opinion as to what sorts of tasks Surma would be able to perform given his assessment, thus providing no objective medical evidence to support the ALJ's decision to omit these limitations from the hypothetical question.  For the above reasons, this Court rejects the Magistrate Judge's recommendation that the testimony of the VE be considered substantial evidence.

## IV. CONCLUSION

For the above reasons, this Court rejects the Magistrate Judge's Report and Recommendation in part, and remands this case to the Commissioner to clarify the hypothetical question given to the Vocational Expert.

IT IS SO ORDERED.

S/Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

July 29, 2010

12